IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUMSEY INDIAN RANCHERIA OF WINTUN  )   2:07-cv-02412-GEB-EFB
INDIANS OF CALIFORNIA; RUMSEY       )
GOVERNMENT PROPERTY FUND I, LLC;    )   ORDER
RUMSEY DEVELOPMENT CORPORATION;     )
RUMSEY TRIBAL DEVELOPMENT           )
CORPORATION; RUMSEY MANAGEMENT      )
GROUP; and RUMSEY AUTOMOTIVE GROUP, )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )
                                    )
HOWARD DICKSTEIN; JANE G. ZERBI;    )
DICKSTEIN & ZERBI; DICKSTEIN &      )
MERIN; ARLEN OPPER; OPPER           )
DEVELOPMENT, LLC; METRO V PROPERTY  )
MANAGEMENT COMPANY; CAPITAL CASINO  )
PARTNERS I; MARK FRIEDMAN; FULCRUM  )
MANAGEMENT GROUP, LLC; FULCRUM      )
FRIEDMAN MANAGEMENT GROUP, LLC, dba )
FULCRUM MANAGEMENT GROUP, LLC;      )
ILLINOIS PROPERTY FUND I            )
CORPORATION; ILLINOIS PROPERTY FUND )
II CORPORATION; ILLINIOS PROPERTY   )
FUND III CORPORATION; 4330 WATT     )
AVENUE, LLC; and DOES 1-100,        )
                                    )
            Defendants.             )
_____)

Plaintiffs move to remand this action to state court. Defendants Howard Dickstein, Jane G. Zerbi, Distein & Zerbi and Dickstein & Merin ("Defendants") oppose the motion. Oral arguments on

1

the motion were heard February 11, 2008.  For the reasons stated, Plaintiffs' motion is granted and the case is remanded to state court.

BACKGROUND

Plaintiffs filed this action in Superior Court of the State of California in the County of Yolo on October 9, 2007.  Plaintiff Rumsey Band of Wintun Indians ("the Tribe") is a sovereign Indian tribe who owns the Cache Creek Casino Resort. (Compl. ¶¶ 1, 3(b).) Defendant Howard Dickstein ("Dickstein") is the Tribe's former attorney and Defendant Arlen Opper ("Opper") is the Tribe's former financial advisor. (Id. ¶ 2.)  Plaintiffs allege that Opper and Dickstein "repeatedly involved the Tribe in complicated investments or transactions in which the business terms were more favorable to others than they were to the Tribe.  Many such deals were fraught with self-dealing and conflicts of interest they failed to disclose." (Id. ¶ 2.)  Plaintiffs further allege that Opper

> collected fees for purportedly managing Tribal assets, without actually managing them[, and] Opper's entire method and structure of compensation was an artifice created [by Opper and Dickstein] to avoid regulatory oversight of Opper's management of an Indian-owned gaming facility, which was illegal without the prior approval of the National Indian Gaming Commission.

(Id. ¶ 7.)  Plaintiffs' Complaint comprises fourteen state law claims including breach of contract, breach of fiduciary duty, unjust enrichment and violation of the California Business and Professions Code Section 17200. (Id. at 34:21, 36:11, 40:13, 50:14, 52:2.)

On November 8, 2007, Defendants removed the action to this Court under 28 U.S.C. §§ 1441 and 1446, arguing that federal question jurisdiction exists because the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, completely preempts Plaintiffs' state law claims

2

1  and because Plaintiffs' claims raise substantial questions of federal
2  law.  (Notice of Removal ¶¶ 1, 2, 10.)
3       Congress passed the Indian Gaming Regulatory Act ("IGRA")
4  "to provide a statutory basis for the operation and regulation of
5  gaming by Indian tribes." Seminole Tribe of Fla. v. Florida, 517 U.S.
6  44, 48 (1996).  IGRA established the National Indian Gaming Commission
7  ("NIGC") to oversee gaming activities on tribal lands.  25 U.S.C. §§
8  2704, 2706.  IGRA permits tribes to enter into management contracts
9  for the operation and management of their gaming facilities subject to
10 the NIGC's approval, which includes ensuring that the contracts
11 provide minimum protection for the tribes.  Id. § 2711.  The NIGC also
12 has the authority to hold a hearing and void any management contract
13 that violates IGRA.  Id. § 2711(f).  NIGC regulations further
14 establish that any management contract that is not approved by the
15 NIGC is void.  25 C.F.R. § 533.  Decisions by the NIGC are final
16 agency actions for purposes of the Administrative Procedures Act and
17 are appealable to a federal district court.  25 U.S.C. § 2714.

                          REMOVAL STANDARDS

19      "[A]ny civil action brought in a State court of which the
20 district courts of the United States have original jurisdiction, may
21 be removed by [] the defendants, to the district court [] for the
22 district and division embracing the place where such action is
23 pending."  28 U.S.C. § 1441(a).  The removal statute is strictly
24 construed against removal jurisdiction, see Gaus v. Miles, Inc., 980
25 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal "has the
26 burden of establishing that removal [is] proper." Duncan v. Stuetzle,
27 76 F.3d 1480, 1485 (9th Cir. 1996).  There is a "'strong presumption'
28

against removal" with "any doubt" resolved in favor of remand. Gaus, 980 F.2d at 566.

Defendants' removal is premised on allegations that federal question jurisdiction exists. To sustain removal on this basis, "a defendant [must establish] Plaintiff's case 'arises under' federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint . . . ." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims." ARCO Envtl. Remediation, L.L.C., v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000) (citing Caterpillar Inc., 482 U.S. at 399). However, "the artful pleading doctrine is a useful procedural sieve to detect traces of federal subject matter jurisdiction in a particular case," through a determination of whether Plaintiffs have "artfully phrased a federal claim by dressing it in state law attire." Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1042 (9th Cir. 2003). Even where the complaint does not indicate on its face that a case "arises under" federal law, jurisdiction may lie if "Congress . . . so completely pre-empt[s] a particular area that any civil complaint raising [Plaintiffs'] select group of claims is necessarily federal in character," Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987), or when the claims "turn on substantial questions of federal law." Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

4

ANALYSIS

I. Complete Preemption

Defendants argue that "IGRA provides a textbook example of an exclusive federal regulatory regime, sufficient to convert state claims, such as those advanced by the Tribe, into federal claims." (Opp'n at 4:26-5:7 (citing Great W. Casinos, Inc. v. Morango Band of Mission Indians, 74 Cal. App. 4th 1407, 1428 (1999); Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996)).) Defendants argue evidence of this exclusive federal regime is IGRA's creation of the NIGC

> to monitor and investigate tribal gaming activity . . . .  The NIGC Chairman is responsible for approving all Indian gaming management contracts pursuant to federal guidelines . . . .  If the Chairman fails to act in a timely manner or a tribe wishes to appeal the Chairman's decision, IGRA specifies the United States District Courts as the exclusive jurisdiction for relief.

(Opp'n at 5:17-22 (citing 25 U.S.C. §§ 2706, 2711, 2711(d), 2714).) Defendants argue Plaintiffs' claims fall within the preemptive scope of IGRA because

> [i]n deciding the meaning of management – and whether Opper's agreement required NIGC approval – the state court would effectively decide the extent of the NIGC's regulatory reach.  If the Court allows a state court to make such a decision, it will condone state interference with the Tribe's governance of gaming activity and require "a determination outside the administrative review scheme crafted by Congress."

(Opp'n at 7:17-22 (citing United States ex rel. The Saint Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co. (Mohawk Tribe), 451 F.3d 44, 51 (2nd Cir. 2006).  Plaintiffs rejoin that "disputes involving illegal management by 'consultants'" fall outside IRGA's preemptive scope because "the statutory provisions and framework[] do not address

5

1 consulting agreements disguised as management contracts, and . . .
2 provide no remedy or right of action for such." (Mot. at 9:4-6.)
3     Removal is proper under the complete preemption doctrine
4 when "the federal statute[] at issue provide[s] the exclusive cause of
5 action for the claim asserted and also set[s] forth procedures and
6 remedies governing that cause of action." Beneficial Nat'l Bank v.
7 Anderson, 539 U.S. 1, 8 (2003). "Complete preemption is rare." ARCO
8 Envtl. Remediation, 213 F.3d at 1115.
9     Defendants argue Plaintiffs' claims are completely preempted
10 by IGRA since they are based on an alleged management contract that
11 has not been approved by the NIGC. (Opp'n at 1:9-2:4.) Defendants
12 assert that Plaintiffs "seek[] to have a state court invalidate
13 [Opper's consulting agreement] as an illegal contract under IGRA."
14 (Id. at 7:12-16.) However, Plaintiffs' Complaint includes no such
15 claim. Instead, the first and second claims are for **breach** of
16 contract. (Compl. at 34:20-21, 36:10-12.) Similarly, Plaintiffs'
17 tenth cause of action for violation of California Business and
18 Professions Code section 17200 ("section 17200") alleges:

> The Opper Defendants engaged in unfair, unlawful
> and/or fraudulent acts under [section 17200] by,
> *inter alia*, . . . (2) disguising illegal
> management of a gaming facility as management of
> the Tribe's assets, and pursuant to that
> agreement, collecting as disguised "asset
> management" fees what were, in reality, casino
> management fees [and, therefore, t]he Tribe is
> entitled to restitution of all sums wrongfully
> held and/or obtained by [Defendants] as a result
> of the unlawful, unfair and fraudulent acts
> alleged above.

26 (Compl. ¶ 205.) Defendants argued at oral arguments that Plaintiffs'
27 prayer for restitution damages evinces that they are seeking to void
28 the Opper agreement. "However, restitution is also available as a

6

1 remedy to redress [state] statutory violations.  And in a statutory
2 action, rescission is not a prerequisite to granting restitution." 1
3 B.E. Witkin, Summary of California Law (Contracts) § 1013 (10th ed.
4 2005) (citing a section 17200 action).

5       At this point it is unknown whether the Opper agreements at
6 issue are unapproved management contracts and therefore are void.
7 Even if the agreements are ultimately construed as void management
8 contracts, they would be found to have never been valid contracts, and
9 "only an *attempt* at forming . . . management contract[s].  If that is
10 the case, then [Plaintiff's] suit in no way interferes with the
11 regulation of a management contract because none ever existed."
12 Gallegos v. San Juan Pueblo Bus. Dev. Bd., Inc., 955 F. Supp. 1348,
13 1350 (D.N.M. 1997).

> Not every contract that is merely peripherally associated with tribal gaming is subject to IGRA's constraints . . . .  For instance, in [Calumet Gaming Group-Kan., Inc. v. Kickapoo Tribe of Kan., 987 F. Supp. 1321, 1325 (D. Kan. 1997)], the court found that a dispute arising from a consulting agreement was not subject to IGRA and, consequently, there was no need to interpret or apply IGRA to resolve the plaintiff's state law claims for breach of that agreement.

20 Casino Res. Corp. v. Harrah's Entm't, Inc., 243 F.3d 435, 439 (8th
21 Cir. 2001) (citations omitted).

22       However, claims "which would interfere with [Plaintiffs']
23 ability to govern gaming [] fall within the scope of IGRA's preemption
24 of state law" because "Congress unmistakably intended that tribes play

a significant role in the regulation of gaming."[1]  Gaming Corp., 88 F.3d at 549-50.

Defendants argue that Plaintiffs' claims interfere with the Tribe's "ability to govern gaming" because to address Plaintiffs' breach of fiduciary duties, breach of contract, and violation of section 17200 claims, "the Court must first decide whether Opper's agreement is subject to NIGC review as a management contract [and t]he meaning of 'management' under IGRA implicates tribal control over gaming activity because it provides a standard for subjecting [tribal contracting] decisions to NIGC approval."  (Opp'n at 8:10-18.)

This argument concerns fact-bound questions regarding the nature of the agreements at issue, and whether they are void management contracts, but it does not establish that these determinations interfere with the Tribe's ability to govern gaming. "Congressional intent is the touchstone of the complete preemption analysis." Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998). "It is a stretch to say that Congress intended to preempt state law when there is no valid management contract for a federal court to interpret, when [Plaintiffs'] broad discretion . . . is not impeded, and when there is no threat to [Plaintiffs'] sovereign immunity or interests." Casino Res. Corp., 243 F.3d at 440; see also Confederated Tribes of Siletz Indians v. Oregon, 143 F.3d 481, 486 n.7 (9th Cir. 1998) (rejecting argument that IGRA entirely preempts a field

---

[1] The Gaming Corporation court relied in part on the following legislative history: "'S. 555 [(IGRA)] is intended to expressly preempt the field in the governance of gaming activities on Indian lands. Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed.'" Gaming Corp., 88 F.3d at 544 (quoting S. Rep. No. 446, 100th Cong., 2d Sess. 6 (1988), reprinted in 1988 U.S.C.C.A.N. 307, 3076).

including Oregon public records laws because "the application of [state public record laws] has no effect on the determination 'of which gaming activities are allowed.'") (citing S. Rep. No. 446, 100th Cong., 2d Sess. 6 (1988)).

Defendants also argue Mohawk Tribe supports their complete preemption position. In Mohawk Tribe, the Second Circuit held that it was without jurisdiction to issue "a declaration that the [] Contract is void for lack of contract approval by the Commission as required by IGRA" because the tribe failed to exhaust its administrative remedies. Mohawk Tribe, 451 F.3d at 50-51. In Mohawk Tribe, the Indian tribe filed a *qui tam* action seeking to void a contract under IGRA. But Plaintiffs' claims do not seek to void the agreements. As Plaintiffs assert, Mohawk Tribe "is perhaps relevant to a defense on the merits as to whether a state (or federal) court can pass on the validity of a contract before NIGC has done so, but such provides no support for removal . . . ."[2] (Reply at 18:28-19:3.)

For the reasons stated, Defendants have not shown that IGRA completely preempts Plaintiffs' claims.

II. Substantial Question of Federal Law

Defendants also contend that removal is appropriate because Plaintiffs' "complaint presents a [substantial] question of federal law on which many of its claims depend: what does 'management' mean for purposes of applying IGRA?" (Opp'n at 11:19-20.) The gist of Defendants' position follows:

---

[2] Indeed, the Mohawk Tribe court explicitly stated that it "decline[d] to hold that regulation of Indian gaming contracts under IGRA creates federal question jurisdiction over any contract claim relating to Indian gaming." Mohawk Tribe, 451 F.3d at 51 n.6.

> By arguing that Opper's agreement should be voided as an unapproved management contract, the Tribe necessarily raises a federal question that must be resolved before the Court can decide state law claims for breach of contract (Count 2), breach of fiduciary duties by Opper and Dickstein (Counts 4 and 5), and unjust enrichment by Opper (Count 11). The Tribe cannot recover for breach of contract without demonstrating the existence of a valid contract. . . . Similarly, the fiduciary duties owed by Opper to the Tribe will vary depending upon the nature and legal force of their agreement . . . . Moreover, the availability of the Tribe's requested relief for the fiduciary claims — disgorgement — will depend upon how the Court characterizes Opper's agreement. . . . Finally, it is unclear that the Tribe can recover for unjust enrichment based upon a contract rendered illegal by the absence of NIGC approval.

(Opp'n at 12:16-13:15 (citations omitted).) Plaintiffs reply that those claims do not allege or seek recovery for any IGRA violation and, therefore, do not raise illegality of the Opper agreement as an essential element.[3] (Reply at 15:1-18.)

Defendants argue "the [general allegations section of the] Complaint contains extensive allegations concerning Opper's management of gaming activity" and since Plaintiffs' state law claims incorporate all of the allegations into each cause of action, "the Tribe necessarily raises a federal question" as an element of their state

---

[3] Since Defendants argue that a substantial federal question justifies removal based on four specific claims, only those claims are analyzed. Plaintiffs argue that because Defendants' Notice of Removal "does not specifically contend that any of Plaintiffs'" claims aside from Counts 4 and 5 "raise questions of federal law" Defendants are "foreclosed" from basing their arguments on those claims now. (Mot. 19:19-27, 20:1-15 (citing <u>Mattel, Inc. v. Bryant</u>, 441 F. Supp. 2d 1081, 1091 n. 11 (C.D. Cal. 2005)).) The Notice of Removal, however, states "[t]he factual allegations . . . (pertaining to the alleged violation of IGRA) are incorporated by reference into every cause of action asserted in this case. The IGRA allegations figure particularly prominently in the causes of action for breach of fiduciary duty . . . and aiding and abetting in breaches of fiduciary duty . . . ." (Notice of Removal ¶ 4.) This statement was sufficient to put Plaintiffs on notice that Defendants based removal jurisdiction on all of Plaintiffs' claims.

law claims.[4]  (Opp'n at 3:2-20, 12:16-18.)  The Ninth Circuit rejected such an argument in Duncan v. "Footsie Wootsie Machine Rentals", stating that the plaintiff's incorporation by reference of a general allegation that she owned the trademark to "Footsie Wootsie" did not provide a basis for substantial federal question jurisdiction since the state law claim was not necessarily based on the misappropriation of the federal trademark.  76 F.3d 1480, 1488 n.11 (9th Cir. 1995).

Federal question removal jurisdiction exists where a state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state jurisdictional responsibilities."  Grable & Sons Metal Prods. Inc., 545 U.S. at 314.  "When a claim can be supported by alternative and

---

[4]  For instance, Plaintiffs allege:
> [B]y restructuring Opper's contracts to pay him a set fee for "consulting" for the Casino, while paying him under a separate agreement of "managing" assets he did not actually manage, Dickstein and Opper ensured a continued cash flow of a particular sum to Opper, while circumventing the NIGC oversight otherwise required. (In truth, if Opper was managing under these contracts, irrespective of their terms and titles, his contracts were *de facto* management contracts and thus void.)
>
> * * *
>
> [O]n information and belief, Dickstein and Opper purposefully structured Opper's compensation so as to avoid triggering NIGC approval for his actual management of the Casino.  In reality, on information and belief, the asset management agreement that Dickstein and Opper devised was an artifice to allow Opper to continue to exert managerial control of all or part of the Tribe's Casino, while still securing a target sum that was roughly equivalent to what Opper would have received under the initial "consulting" contract with the Casino, had it remained in place.

(Compl. ¶¶ 16, 44.)

independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim." Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996). "While [Defendants] may defend against the state law claims by arguing that [they fail because the agreements are void under the federal IGRA], this answer is a defense to [Plaintiffs'] claimed right, not an element of [Plaintiffs'] state law cause of action." ARCO Envtl Remediation, 213 F.3d at 1116.  Thus, the issue is whether Plaintiffs' **right to relief** arises out of a necessary, substantial and "disputed issue of federal law," Bennett v. Southwest Airlines Co., 484 F.3d 907, 909 (7th Cir. 2007); it is not enough that Plaintiffs' right to relief could fail because of a Defendant's defense based on federal law.  "In the main, a claim 'arises under' the law that creates the cause of action."  Id. at 909.

The unjust enrichment claim against Opper can be supported simply by showing that he failed "to reimburse the Tribe for his personal use of aircraft in which the Tribe possessed rights of use." (Compl. ¶ 211.)  The obligation to reimburse the tribe appears to have arisen from tribal policies, completely independent from any contract that Opper made with the Tribe.  "Pursuant to the Tribe's policies, the Tribal Council permitted . . . Dickstein and Opper to use the NetJets aircraft for personal trips for 10 hours per year as long as they reimbursed the Tribe for half the trip's hourly rate."  (Compl. ¶ 128.)  Thus, the unjust enrichment claim can be supported by alternative and independent state law theories.

Nor has it been shown that Plaintiffs' breach of contract, breach of fiduciary duties and unjust enrichment claims arise under a

necessary federal question of IGRA law. Plaintiffs' breach of contract claim arises out of state contractual rights. Similarly, Plaintiffs' breach of fiduciary duties claims arise out of the duties Defendants owe the tribe as their lawyers, agents and managers, not out of any right created by federal law.[5] (Compl. ¶¶ 157, 165.) Therefore, Defendants have not shown that the substantial federal question doctrine supports removal jurisdiction.

CONCLUSION

For the reasons stated, Plaintiffs' motion to remand is granted and the Clerk of the Court shall remand this action to the Yolo County Superior Court.

IT IS SO ORDERED.

Dated: March 5, 2008

GARLAND E. BURRELL, JR.
United States District Judge

---

[5] Plaintiffs' request for disgorgement does not necessarily mean Plaintiffs premised their breach of fiduciary duties claims on an illegal contract. See Jain v. Clarendon Am. Co., 304 F. Supp. 2d 1263, 1265 (W.D. Wash. 2004) (citing previous decision ordering defendant to disgorge profits as award for breach of contract and breach of fiduciary duties claims).